UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. _____ |
| | ) | |
| Detective Stephen Struska, Officer Corina Sumner | ) | |
| Officer Robert Richert | ) | |
| and Cook County | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

1. This is a civil action for violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 and Federal law for deprivations under color of law of the Plaintiff's rights as secured by the Constitution of the United States of America.

2. This is an action for damages in excess of $75,000.

## THE PARTIES

3. Plaintiff, "Jane Doe" is a resident of Sycamore, IL, which is located in DeKalb County, IL.

4. Plaintiff desires to remain publicly anonymous for safety concerns.

5. Plaintiff Jane Doe's husband, referred in this complaint as "The Decedent." The Decedent is not being named in this Complaint in an effort to keep the identity of Plaintiff publicly anonymous.

6. Cicero Police Department ("Cicero") is a department operating under the purview of the Town of Cicero, which is a local municipality situated in Cook County, IL.

7. At all times material hereto, Defendant Detective Stephen Struska, Officer Richert and Defendant Officer Corina Sumner were employed by the Town of Cicero and the Cicero Police Department.

8. Defendant Cook County is a governmental entity situated in Cook County, IL. The Cook County Medical Examiner's Office is a department that operates under the purview

of Cook County, with a principal place of business located at 2121 W Harrison St, Chicago, IL.

## COUNT I— VIOLATION OF 42 U.S.C. § 1983
### Detective Stephen Struska, Robert Richert and Officer Corina Sumner

9. On July 7, 2024, The Decedent was found to be unresponsive in room 212 of The Shamrock Motel located at 1212 S. Cicero Avenue, Chicago, IL by motel staff.

10. Cicero Police Department and Chicago Fire Ambulance were dispatched to the motel. The Decedent was pronounced dead at the scene.

11. Cicero Police Department opened up a death investigation.

12. Officer Robert Richert was dispatched to the Shamrock Motel, where he spoke with the employees/agents of the Shamrock Motel and learned The Decedent's identity and viewed his body and identification.

13. Photographs were taken at the scene by Officer Corina Sumner, which included the deceased, along with his wallet containing vital identification cards and emergency contacts.

14. On or about July 7, 2024, the Officers who responded at the scene did not attempt to notify next-of-kin of The Decedent's passing.

15. On or about July 7, 2024, the body was transported to the Medical Examiner's Office for an autopsy, where the Decedent's body would sit unidentified until July 11, 2024.

16. On or about July 8, 2024, after not hearing from The Decedent for more than 24 hours after his scheduled weekend away, JANE DOE, began a desperate search for her husband.

17. On July 8, 2024, JANE DOE called her husband's employer and was notified that he had taken that day off.

18. On July 10, 2024, her husband's employer contacted JANE DOE and notified her that The Decedent had not shown up to work.

19. On or about July 11th, JANE DOE filed a formal missing person's report with the Sycamore Police Department, where she described her husband in great detail.

20. On or about, July 11th, 2024, JANE DOE was notified by the officer with Sycamore Police Department notifying JANE DOE that the information from the missing person's report filed matched remains being held at the Cook County Medical Examiner's Office.

21. On or about July 13th, 2024, JANE DOE met with Detective Stephen Struska of the Cicero Police Department and provided a statement.

22. Based on JANE DOE's conversation, Detective Stephen Struska was assigned responsibility for handling the case relating to Decedent.

23. During this conversation, JANE DOE was led to believe that Detective Struska had knowledge regarding who may have provided The Decedent drugs and/or who may have been involved in his death.

24. JANE DOE specifically requested that an investigation be conducted as she believed there were individuals responsible for her husband's death.

25. Certain records were thereafter received via FOIA request. Upon review of the FOIA records of the investigation, JANE DOE learned that no meaningful investigative efforts had been made regarding her husband's death. Notably:

- Surveillance footage from the Shamrock Motel was never obtained.
- The case remained stagnant from July 13th-September 7th, 2024, following receipt of the Medical Examiner's Report, noting the case was closed after death was deemed an accident.

26. Put simply, JANE DOE's concerns were disregarded and her husband's death were considered not important.

27. Additionally, none of the named Defendant Cicero Police Department Officers notified JANE DOE of her husband's passing, despite multiple officers being aware of his identification and contact information.

28. The Decedent's identification was photographed by Defendant Sumner and was viewed by Defendant Richert at the scene. Additionally, his wallet contained emergency contact information due to a medical condition and implanted medical device.

29. As his designated emergency contact, JANE DOE should have been promptly notified.

30. The distress and unnecessary anguish caused by the failure investigate and failure to inform Plaintiff of her husband's death are immeasurable. JANE DOE suffered emotional distress, mental anguish as a direct and proximate result of the actions of Cicero Police, including Detective Stephen Struska and Officer Sumner.

31. Jane Doe was forced to endure days of uncertainty, desperately searching for her husband, only to learn - through her own efforts - that her husband had been deceased the entire time.

32. Cicero Police Officers and Detectives protect and serve the residents of the under the color of Illinois law and are bound by the United States Constitution.

33. The overriding purpose of constitutional government in the United States has been to provide for the use of sufficient power to maintain order, stability, and security for the liberties of the people.

34. The Civil Rights Act of 1964 outlaws discrimination based on race, color, religion, sex, and national origin.

35. The Equal Protection Clause of the 14th Amendment mandates that individuals in similar situations be treated equally by the law.

36. JANE DOE is an African American female.

37. The Decedent is an African American male.

38. Detective Struska and Officer Sumner deprived Plaintiff of her rights under the 14th Amendments to the United States Constitution as well as those guaranteed by the Civil Rights Act of 1964, by failing to investigate, inform JANE DOE of The Decedent's passing despite having emergency contact information, by failing to take any reasonable care in this matter.

39. Detective Struska and Officer Sumner viewed The Decedent as a black man in a low budget motel and deemed his death not worthy of investigation.

40. Officer Sumner photographer The Decedent's identification but saw The Decedent as a black male in a lower budget motel and failed to treat his death as worthy of a phone call to his family.

41. Officer Sumner and Detective Struska treated JANE DOE and the Decedent with disregard due to their race and the area where The Decedent was found.

42. Officer Sumner and Detective Struska violated both the Civil Rights Act and the 14th Amendment as follows:

   a. Treated JANE DOE and the Decedent differently because of their race and perceived societal standing;
   b. Treated JANE DOE and the Decedent without dignity because of their race and perceived societal standing;
   c. Failed to take any investigatory steps because of the The Decedent's race and perceived societal standing;
   d. Failed to follow up adequately with The Decedent's next of kin despite having his identification, emergency contact card, and identity because of Decedent's race and perceived societal standing;

4

    e. Failed to treat JANE DOE with any level of care because of her race and perceived societal standing;

43. Plaintiff has no adequate remedy under state law.

44. Pursuant to Illinois law, the officers and police department are immune from civil liability for acting within the course of their employment and <u>there is no adequate state law remedy</u> at Plaintiff's disposal.

45. Had Officers Sumner, Richert and Detective Struska acted properly in the scope of their employment, Plaintiff and The Decedent would not have been deprived of their Constitutional rights and protections under Federal law. As such, there is a causal link between the Officers' actions and Plaintiff's Constitutional injury.

46. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for judgment as follows:

a. Attorneys' Fees and Costs under 42 U.S.C §1988;
b. Costs of suit;
c. Punitive Damages;
d. Any other further relief as the Court deems just and appropriate.

## COUNT II--WILLFUL AND WANTON MISCONDUCT

47. On July 7, 2024, The Decedent was found to be unresponsive in room 212 of The Shamrock Motel located at 1212 S. Cicero Avenue, Chicago, IL by motel staff.

48. Cicero Police Department and Chicago Fire Ambulance were dispatched to the motel. The Decedent was pronounced dead at the scene.

49. Cicero Police Department opened up a death investigation.

50. Photographs were taken at the scene by Officer Corina Sumner, which included the deceased, along with his wallet containing vital identification cards and emergency contacts.

51. On or about July 7, 2024, the Officers who responded at the scene did not attempt to notify next-of-kin of The Decedent's passing.

52. On or about July 7, 2024, the body was transported to the Medical Examiner's Office for an autopsy, where Decedent's body would sit unidentified until July 11, 2024.

53. On or about July 8, 2024, after not hearing from The Decedent for more than 24 hours after his scheduled weekend away, JANE DOE, began a desperate search for her husband.

5

54. On July 8, JANE DOE called her husband's employer and was notified that he had taken that day off.

55. On July 10, 2024, her husband's employer contacted JANE DOE and notified her that The Decedent had not shown up to work.

56. On or about July 11th, JANE DOE filed a formal missing person's report with the Sycamore Police Department, where she described her husband in great detail.

57. On or about, July 11th, 2024, JANE DOE received a call from an officer with Sycamore Police Department notifying JANE DOE that the information from the missing person's report filed matched remains being held at the Cook County Medical Examiner's Office.

58. If JANE DOE had not affirmatively taken action to locate Decedent, she likely would never have been informed.

59. During the time The Decedent's body was in the custody of the Medical Examiner's office, certain documents, logs, fingerprints and other public documents were created.

60. The Medical Examiner's office came into possession of The Decedent's identification, name, emergency contact and identity.

61. The Medical Examiner's autopsy report indicates the Decedent's name and that he was brought in with identification.

62. At all times material, COOK COUNTY, through its agents and employees, acted willfully and wantonly, and with deliberate and conscious disregard for Plaintiff and The Decedent's family, in that they:

> a. Failed to follow or comply with policies and procedures that regulate informing next of kin;
> b. Failed to properly log The Decedent's body upon arrival at the Cook County Morgue;
> c. Failed to take appropriate measures to verify the identity of Decedent such as:
>> i. Fingerprinting
>> ii. FBI notification
>> iii. ID check
>> iv. Failed to follow the Medical Examiner's operating procedures requiring that the identification of the decedent by double checked;
>
> d. Failed to make an effort to confirm the identify The Decedent;
> e. Misidentified, mistreated, and mishandled the Decedent's body;

6

    f. Failed to comply with 50 ILCS 722/15 (b)(2);
    g. Violated Cook County Personnel Rule 8.2(b);
    h. Otherwise acted in a willful or wanton manner.

63. As a proximate result of one or more of the intentional acts or omissions of Defendant, Cook County, Plaintiff sustained severe and extreme emotional distress and will require treatment for said distress. Plaintiff also became unwilling to work, suffering mental and physical pain and suffering, which kept her from her ordinary care and duties.

64. The Medical Examiner's Office has an extensive history of widespread, systematic failures and improprieties.

65. This widespread, long-term systematic problem has been noted by the Office of Inspector General, multiple lawsuits, and by local Chicago Media. In a similar instance, the Medical Examiner was noted by the Office of Inspector General to have suffered "prior similar instances of negligence."

66. The Medical Examiner's Office has failed to address these systematic failures and as such many families have suffered.

67. The failure to address the systematic failure can, at this point, only be seen as willful and wanton.

**WHEREFORE**, Plaintiff respectfully requests this Court to enter Judgment against Cook County in an amount to be determined at Trial, plus Court costs, attorney's fees, and any other relief available under Illinois law.

## COUNT III—INTERFERENCE WITH THE RIGHT OF THE NEXT OF KIN TO POSSESS AND PRESERVE THE BODY OF DECEDENT

68. Plaintiff re-alleges paragraphs 1-65 and incorporates those paragraphs into Count III.

69. At all times material hereto, Defendant Cook County, through its agents and/or employees, acted willfully and wantonly and with deliberate and conscious disregard for Plaintiffs in that Defendant:

    a. Failed to notify Plaintiff as next of kin that The Decedent had died;
    b. Failed to follow or comply with policies and procedures that regulate informing next of kin;
    c. Failed to _properly_ log the body upon arrival at the Cook County Morgue;
    d. Failed to take appropriate measures to verify the identity of The Decedent such as:

7

      i. Fingerprinting
     ii. FBI notification
    iii. ID check
    iv. Failed to follow the Medical Examiner's operating procedures requiring that the identification of the decedent by double checked;

e. Failed to make an effort to confirm the identity The Decedent;
f. Misidentified, mistreated, and mishandled Decedent's body;
g. Failed to comply with 50 ILCS 722/15 (b)(2);
h. Violated Cook County Personnel Rule 8.2(b);
i. Otherwise acted in a willful or wanton manner.

70. Defendant COOK COUNTY acted with conscious disregard to the rights of Plaintiff to possess the body of their next of kin.

71. As a proximate result of one or more of the intentional acts or omissions of Defendant, Cook County, Plaintiff sustained severe and extreme emotional distress.

72. The Medical Examiner's Office has an extensive history of widespread, systematic failures and improprieties.

73. This widespread, long-term systematic problem has been noted by the Office of Inspector General, multiple lawsuits, and by local Chicago Media. In a similar instance, the Medical Examiner was noted by the Office of Inspector General to have suffered "prior similar instances of negligence."

74. The Medical Examiner's Office has failed to address these systematic failures and as such many families have suffered.

75. The failure to address the systematic failure can, at this point, only be seen as willful and wanton.

WHEREFORE, Plaintiff respectfully requests this Court to enter Judgment against Cook County in an amount to be determined at Trial, plus Court costs, attorney's fees, and any other relief available under Illinois law.

Dated: July 3, 2025                        Respectfully submitted,

                                                  By: /s/ Christopher M. Jahnke
                                                       Attorney for Plaintiff

Christopher M. Jahnke (cmj@jtlawllc.com)
FRANKFORT LAW GROUP
10075 W. Lincoln Highway
Frankfort, IL 60423
Phone: (708)349-9333
ARDC: 6294347