**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOANNE DUNBAR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 25-cv-7515** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **DETECTIVE STEPHEN STRUSKA,** | ) | |
| ***et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joanne Dunbar ("plaintiff") brings this action against Cook County, as well as Cicero Police Officers Stephen Struska, Robert Richert, and Corina Sumner (collectively, the "defendant Officers"), related to defendant Officers' conduct following the unexpected death of plaintiff's husband, Eddie Dunbar ("Dunbar"). Specifically, in her first amended complaint, (Dckt. #39), plaintiff asserts an equal protection claim pursuant to 42 U.S.C. §1983 against the defendant Officers related to their investigation into Dunbar's death (Count I), and state law claims for willful and wanton misconduct and intentional infliction of emotional distress against Cook County related to its handling of Dunbar's remains (Counts II and III).

Before the Court are defendants' fully briefed motions to dismiss, (Dckt. ##41, 42). Although the facts alleged by plaintiff describe a truly unfortunate series of events that undoubtedly caused her to experience trauma and emotional distress, the Court finds that it lacks subject matter jurisdiction over plaintiff's equal protection claim and dismisses that claim without prejudice. The Court, in its discretion, also dismisses plaintiff's state law claims without prejudice to their refiling in state court. Accordingly, the Court grants the motions to dismiss filed by the defendant Officers and Cook County.

## I. BACKGROUND

The Court draws the following facts from plaintiff's amended complaint, (Dckt. #39), and the exhibits attached to the defendants' motions to dismiss to the extent they are "central to the complaint and are referred to in it." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *see also Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (noting that it is "well-settled in this circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim") (cleaned up).

On July 7, 2024, Dunbar (an African American male) was found unresponsive in a room of the Shamrock Motel located at 1212 S. Cicero Avenue, Chicago. (Dckt. #39 ¶9). The Cicero Police Department and Chicago Fire Ambulance were dispatched to the motel and, unfortunately, Dunbar was pronounced dead at the scene. (*Id*. ¶10). The Cicero Police Department opened up a death investigation. (*Id*. ¶11). Specifically, Officer Robert Richert was dispatched to the Shamrock Motel, where he spoke with the employees/agents of the Motel, learned Dunbar's identity, and viewed his body. (*Id*. ¶12). Officer Corina Sumner took photographs at the scene. (*Id*. ¶13). Those photographs included images of Dunbar and the motel room, as well as images of Dunbar's wallet and his ID. (*Id* ¶¶13, 24; *see also* Dckt. #42 at 12–19). Dunbar's wallet held emergency contact information due to a medical condition and implanted medical device. (Dckt. #39 ¶24). Officer Richert viewed Dunbar's ID at the scene. (*Id*.). Nonetheless, none of the Officers contacted plaintiff "despite having the emergency contact information and/or means to easily identify [Dunbar] and his next of kin." (*Id*. ¶25). Following the investigation at the crime scene, Dunbar was transported to the Cook County Medical Examiner's Office for an autopsy. (*Id*. ¶64).

Meanwhile, on July 8, 2024 (a Monday), after not hearing from her husband "for more than 24 hours after his scheduled weekend away," plaintiff (an African American female) began a desperate search to locate Dunbar. (Dckt. #39 ¶14). When she called Dunbar's employer, she was told that Dunbar had taken that day off. (*Id*. ¶15). On July 10, 2024, however, Dunbar's employer contacted plaintiff and notified her that Dunbar had not shown up to work. (*Id*. ¶16).

On or about July 11, 2024, plaintiff filed a formal missing person's report with the Sycamore Police Department, in which she described her husband in "great detail." (*Id*. ¶17). On July 11, 2024, plaintiff was notified by an officer from the Sycamore Police Department that the information from the missing person's report "matched remains being held at the Cook County Medical Examiner's Office." (*Id*. ¶18).

On July 13, 2024, plaintiff met with Detective Stephen Struska of the Cicero Police Department and provided a statement. (*Id*. ¶19). Based on this conversation, Detective Struska was assigned the responsibility of handling Dunbar's case. (*Id*. ¶20). According to plaintiff, it was clear during her conversation with Detective Struska that he "had knowledge regarding who may have provided [Dunbar] drugs and/or who may have been involved in his death." (*Id*. ¶21). Plaintiff specifically asked that an investigation be conducted as she believed there were individuals responsible for Dunbar's death. (*Id*. ¶22). Plaintiff's concerns, however, were disregarded. (*Id*. ¶23).

Ultimately, on September 3, 2024, the Cook County medical examiner determined the cause of Dunbar's death to be "combined drug toxicity" with cardiovascular disease as a contributing factor. (Dckt. #42-1 at 25–26). The medical examiner explained further that, "[F]or the purposes of vital statistics and public heath record keeping, the manner of death is best certified as [an] accident." (*Id*. at 26). Following receipt and review of the medical examiner's

report, Officer Struska spoke with plaintiff, advised her of the medical examiner's findings, and closed Dunbar's case. (*Id*. at 2).

In Count I of her amended complaint, plaintiff brings an equal protection claim pursuant to 42 U.S.C. §1983 against the defendant Officers for failing to properly investigate Dunbar's death because he "was a black man in a low budget motel." (*Id*. ¶35). Specifically, plaintiff maintains that the Officers violated the equal protection clause of the Fourteenth Amendment when, *inter alia*, they (1) failed to interview the individual who may have sold Dunbar drugs or the individual who may have been with Dunbar when he passed; (2) failed to contact plaintiff despite having Dunbar's ID and emergency contact information; (3) failed to obtain surveillance footage from the Shamrock Motel; and (4) treated plaintiff and Dunbar differently "because of their race and perceived societal standing." (*Id*. ¶33). Plaintiff maintains that this is in stark contrast to the manner in which the Cicero Police Department "actively investigated the death of a white male to the point where they communicated with the media to seek information about the death." (*Id*. ¶37). The defendant Officers move to dismiss plaintiff's equal protection claim pursuant to Rule 12(b)(6) for failure to state a claim.

In Counts II and III, plaintiff brings claims for "willful and wanton conduct" and intentional infliction of emotional distress, respectively, against Cook County for its failure to take steps to properly identify Dunbar's remains and notify his next of kin between July 7, 2024 and July 11, 2024. Cook County moves to dismiss these claims for lack of jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

## II. ANALYSIS

### A. Plaintiff Lacks Article III Standing to Assert Her Alleged Equal Protection Claim

Plaintiff alleges "race-based discrimination in the provision of police services, which is prohibited by the Equal Protection Clause." (Dckt. #45 at 6) (citing *Ae Ja Elliot-Park v. Manglona*, 592 F.3d 1003, 1007 (9th Cir. 2010)). Specifically, plaintiff alleges that the defendant Officers failed to properly investigate her husband's death and failed to promptly notify her of his death after they discovered his wallet at the scene. (*Id.* at 6–7).

Although defendants seek to dismiss plaintiff's claim on its merits, this Court has an obligation to first consider the question of whether plaintiff has standing to bring this claim because standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1360 (11th Cir. 2007) (cleaned up); *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1126 (10th Cir. 2013), *aff'd sub nom.*, *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682 (2014) ("[W]henever standing is unclear, we must consider it *sua sponte* to ensure there is an Article III case or controversy before us."). Indeed, if a plaintiff does "not have standing to raise their claims the court is without authority to consider the merits of the action." *Meyers v. Nicolet Rest. of De Pere*, LLC, 843 F.3d 724, 726 (7th Cir. 2016) (cleaned up). A plaintiff "'invoking federal jurisdiction bears the burden of establishing Article III standing.'" *Collier v. SP Plus Corp.*, 889 F.3d 894, 896 (7th Cir. 2018), *quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "At the pleading stage, the plaintiff need not prove [she] has standing, but must allege facts sufficient to plausibly allege standing." *Halpern v. Roberts*, No. 3:25-CV-50398, 2025 WL 3677271, at *1 (N.D.Ill. Dec. 18, 2025) (citing cases).

To establish standing, "a plaintiff must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). As to the first prong, "[a]n injury is 'particularized' if it affect[s] the plaintiff in a personal and individual way.'" *Id.* at *2, *quoting Lujan*, 504 U.S. at 560, and "[i]t is concrete if it is 'real' [and] not abstract." *Id.*, *quoting Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Furthermore, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be h[erself] among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 734-35 (1972); *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 336 (7th Cir. 2019) (same).

For the reasons stated below, the Court finds that plaintiff has failed to allege that she suffered an "injury in fact" that is sufficient to establish standing.

To begin, as defendants note, "a citizen does not have a constitutional or federally recognized right to an adequate police investigation, or any investigation at all." *Bowen v. Sullivan*, No. 11-CV-6865, 2012 WL 2116121, at *3 (N.D.Ill. June 8, 2012) (citing *Linda R.S. v. Richard D.,* 410 U.S. 614, 619 (1973)) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) ("[Plaintiff] does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction."). Put another way, "mere inactivity by police does not [alone] give rise to a constitutional claim." *Rossi*, 790 F.3d at 735. So too, as defendants correctly note, there is no "constitutional right to

timely notice" of a family member's death. *Martinez v. Wayne Cnty., Michigan*, 142 F.4th 828, 843–44 (6th Cir. 2025).

Moreover, plaintiff's reliance on the decision in *Elliot-Park v. Manglona* to support her argument that she has standing to bring her equal protection claim is misplaced. 92 F.3d 1003 (9th Cir. 2010). Although the *Elliot-Park* case does hold that there is a constitutional right to have police services administered in a nondiscriminatory manner that is violated when a state actor denies such protection to disfavored persons, *id*. at 1007, the Ninth Circuit never addressed the issue of standing and the decision therefore does not support plaintiff's assertion that she has standing here.[1] *See Doe v. Anoka Cnty.*, ___ F.4th ___, 2026 WL 2293287, at *4 (8th Cir. Aug. 10, 2026), *quoting Lefebure v. D'Auilla*, 15 F.4th 650, 657 (5th Cir. 2021) (holding that it could not "rely on *Elliot-Park* to hold that a plaintiff has standing when the opinion 'do[es] not even mention standing'"). Furthermore, in *Doe*, the Eighth Circuit expressly held that a victim of a crime lacks standing to bring a class-based discrimination claim against officers for alleged failures to investigate, which is the very claim plaintiff asserts here. *Id*. at *3–5; *Doe v. Mayor & City Council of Pocomoke City*, 745 F.Supp. 1138–40 (D.Md. 1990) (same). The Eighth Circuit's decision in *Doe* is consistent with the Supreme Court's decision in *Linda R.S.* and the Seventh Circuit's decision in *Rossi* (both cited above), and the Court finds it persuasive.

What is more, plaintiff—as the wife of Dunbar, the purported crime victim—is even further removed from possessing the type of injury in fact that would support standing. As one court has stated: "if a crime victim lacks standing to bring an action for failure to investigate the crime in which he was a victim, it logically follows that a person lacks standing to bring an action for failure to investigate an alleged crime in which someone else was the victim."

[1] The Court notes that the decision in *Elliot-Park* is factually distinguishable as well. In that case, the plaintiff's equal protection claim was based on the failure to investigate a crime that directly involved her (and not someone else, as here). *Elliot-Park*, 592 F.3d at 1005–07.

*Anderton v. Arizona Dep't of Pub. Safety*, No. CV-25-01589-PHX-DWL, 2025 WL 1425002, at *3 (D.Ariz. May 16, 2025); *see also Jay v. Harris*, No. C-07-01544 MHP, 2007 WL 2019563, at *1–2 (N.D.Cal. July 9, 2007) ("Plaintiff would also lack standing to challenge the investigative policy of the police, were he to bring an action against them for failing to investigate his brother's death.").

For these reasons, the Court finds that plaintiff has failed to plausibly allege an injury in fact sufficient to support Article III standing to pursue her equal protection claim. Accordingly, the Court lacks subject matter jurisdiction over plaintiff's equal protection claim and that claim is dismissed without prejudice.

### B. The Court Declines to Exercise Jurisdiction Over Plaintiff's State Law Claims

Plaintiff's remaining claims against Cook County for willful and wanton conduct and intentional infliction of emotional distress arise under state law. Because the Court lacks subject matter jurisdiction over plaintiff's federal constitutional claim due to her failure to plausibly allege standing, the Court, in its discretion, declines to exercise supplemental jurisdiction over plaintiff's state law claims. *See Carlsbad Tech. Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) ("A district court's decision whether to exercise [supplemental] jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary."); 28 U.S.C. §1367(c)(3). The Court thus grants defendant Cook County's motion to dismiss, (Dckt. #41), and it dismisses plaintiff's state law claims for willful and wanton conduct and intentional infliction of emotion distress without prejudice to their refiling in state court. *Doxtator v. O'Brien*, 39 F.4th 852, 867 (7th Cir. 2022) ("Without any federal claims over which it had original jurisdiction, the district court's decision not to exercise supplemental jurisdiction over the pendent state law claims was not an abuse of discretion.").

## CONCLUSION

For the foregoing reasons, the Court grants the Officer defendants' motion to dismiss, (Dckt. #42), without prejudice based on lack of subject matter jurisdiction. The Court also grants Cook County's motion to dismiss, (Dckt. #41), and it dismisses plaintiff's state law claims for willful and wanton conduct and intentional infliction of emotional distress without prejudice to their refiling in state court.

**Date: September 3, 2026**

**Jeffrey I. Cummings**
**United States District Court Judge**